United States Court of Appeals,

Fifth Circuit.

No. 93-8408.

In the Matter of BOERNE HILLS LEASING CORPORATION, Debtor.

CITY OF BOERNE, Appellant,

v.

BOERNE HILLS LEASING CORP. and Chrysler Credit Corporation, Appellees.

In the Matter of BOERNE HILLS LEASING, Debtor.

KENDALL COUNTY and Boerne Independent School District, Appellants,

v.

BOERNE HILLS LEASING CORP. and Chrysler Credit Corporation, Appellees.

Feb. 28, 1994.

Appeal from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM and DUHÉ, Circuit Judges, and LITTLE,[*] District Judge.

LITTLE, District Judge:

This bankruptcy appeal is essentially a priority dispute between the lien claims of, on the one hand, the Chrysler Credit Corporation ("Chrysler") and, on the other, certain taxing units of the State of Texas: the City of Boerne, Kendall County, and the Boerne Independent School District (collectively, the "taxing units"). The bankruptcy court concluded that Chrysler had a superior claim to the proceeds of sale of the debtor's property.

---

[*]District Judge of the Western District of Louisiana, sitting by designation.

1

On appeal, the district court affirmed.  We reverse.

I.

Chrysler and the taxing units held liens on the inventory of the debtor, the Boerne Hills Leasing Corporation.  Chrysler perfected its lien by filing a financing statement;  subsequently, the taxing units' liens arose pursuant to Texas statute.[1]  The debtor then filed bankruptcy,[2] and the bankruptcy court authorized the debtor to sell its inventory free and clear of liens.  Upon determining that Chrysler's lien had priority over all other liens against the debtor's property and that the inventory sale would not generate enough cash to pay Chrysler's claim in full, the bankruptcy court ordered the debtor to distribute all sale proceeds to Chrysler.  The taxing units then filed objections to the bankruptcy court's distribution order,[3] and the bankruptcy court scheduled a hearing on the priority dispute.

---

[1]When the debtor filed bankruptcy, § 32.01 of the Texas Tax Code provided, "On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes ... ultimately imposed for the year on that property."  Tex.Tax Code Ann. § 32.01 (West 1992) (amended 1993).  On 1 October 1988, taxes became due and payable on the debtor's business personal property in the aggregate amount of $35,446.40.  Of this total, the debtor owed the City of Boerne $9,994.60, Kendall County $4,826.80, and the Boerne Independent School District $20,625.

[2]The debtor filed a Chapter 11 bankruptcy petition on 6 December 1988.  The debtor's case was converted to a Chapter 7 liquidation on 30 April 1990.

[3]The City of Boerne filed an "Objection to Distribution of Sale Proceeds" on 19 October 1989, Kendall County filed a "Notice of Lien Claim to Proceeds of Sale and Request for Distribution" on 20 October 1989, and the Boerne Independent School District filed a "Notice of Lien Claim to Proceeds of Sale and Request for Distribution" on 4 January 1990.  The taxing units' filings will hereinafter be referred to, collectively, as "objections."

At the hearing, the taxing units alleged that under the Texas Tax Code their liens had priority over the liens of consensual creditors, such as Chrysler, and that they therefore had superior claims to the sale proceeds.[4] In response, Chrysler noted that the taxing units' liens were unenforceable against a bona fide purchaser, without actual notice, at the time the debtor filed bankruptcy[5] and argued, therefore, that the taxing units' liens were unperfected and subordinate to its properly perfected lien under Texas law. Chrysler urged the bankruptcy court to deny the taxing units' objections.

The bankruptcy court denied the taxing units' objections in a published opinion. *In re Boerne Hills Leasing Corp.,* 117 B.R. 264 (Bankr.W.D.Tex.1990). Adopting Chrysler's reasoning, the bankruptcy court found that since the taxing units' liens were unenforceable against a bona fide purchaser, they were unperfected and subordinate to Chrysler's properly perfected lien under Texas law. Finding further that the taxing units could not perfect their liens in bankruptcy, the bankruptcy court concluded the Chrysler had a superior claim to the sale proceeds.

---

[4]Section 32.05 of the Texas Tax Code provides, in pertinent part, "a tax lien provided by this chapter takes priority over ... the claim of any holder of a lien on property encumbered by the tax lien, whether or not the debt or lien existed before attachment of the tax lien." Tex.Tax Code Ann. § 32.05(b) (West 1992).

[5]When the debtor filed bankruptcy, § 32.03 of the Texas Tax Code provided, "A tax lien may not be enforced against personal property transferred to a bona fide purchaser for value who does not have actual notice of the existence of the lien." Tex.Tax Code Ann. § 32.03 (West 1988) (amended 1991).

The taxing units appealed to the district court. Like the bankruptcy court, the district court found that the taxing units' liens were unperfected under Texas law. Unlike the bankruptcy court, the district court concluded that the taxing units could "perfect" their liens in bankruptcy—by filing notice pursuant to § 546(b) of the Bankruptcy Code.[6] Even as perfected, however, the district court found that the taxing units' liens were still "unenforceable against a bona fide purchaser, without actual notice, at the time the debtor filed bankruptcy." Therefore, the district court concluded that the taxing units' liens were avoidable under § 545(2) of the Bankruptcy Code.[7]

---

[6]Section 546(b) of the Bankruptcy Code provides:

> The [trustee's avoidance power under, *inter alia,* § 545(2) is] subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of such perfection. If such law requires seizure of such property or commencement of an action to accomplish such perfection, and such property has not been seized or such action commenced before the date of the filing of the petition, *such interest in such property shall be perfected by notice within the time fixed by such law for such seizure or commencement.*

11 U.S.C. § 546(b) (1988) (emphasis added). The district court found that the taxing units' objections constituted "notice" under § 546(b).

[7]Section 545(2) of the Bankruptcy Code provides, in part: "The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien ... is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser ... whether or not such purchaser exists." 11 U.S.C. § 545(2) (1988). Pursuant to § 1107 of the Bankruptcy Code, the debtor-in-possession is authorized to exercise the trustee's avoidance power under § 545(2). *See id.* § 1107.

The district court noted that neither the debtor-in-possession nor the trustee, upon appointment, had initiated an adversary proceeding to avoid the taxing units' liens.[8] The court found, however, that Chrysler had standing to exercise the debtor-in-possession's avoidance power and that the present action was sufficient to accomplish avoidance. The district court concluded that Chrysler's liens were superior to the taxing units' avoided liens and affirmed the bankruptcy court's order.

The taxing units appealed to this court, arguing that their liens have priority over Chrysler's liens under Texas law, that their liens were not avoided under bankruptcy law, and that they therefore possess superior claims to the proceeds of sale of the debtor's inventory.

II.

This appeal is limited to issues of statutory construction. Therefore, we review the bankruptcy and district courts' decisions *de novo*. *In re Young,* 995 F.2d 547, 548 (5th Cir.1993).

The first issue we consider is the relative priority of the taxing units' liens under state law. Section 32.05 of the Texas Tax Code explicitly states that a tax lien, such as those of the

---

[8]The debtor-in-possession filed responses to the taxing units' objections and appeared at the hearing on the priority dispute; he did not argue for avoidance, however.

The trustee filed a two-paragraph "joinder in brief" in connection with Chrysler's district court brief. Chrysler's brief also did not argue for avoidance, stating "It is not necessary to file an adversary proceeding to avoid the [taxing units'] liens because [Chrysler's] lien is [ ] superior."

taxing units, takes priority "over the claim of any holder of a lien on property encumbered by the tax lien, whether or not the debt or lien existed before attachment of the tax lien." Therefore, the taxing units' liens have priority over Chrysler's lien under state law. *See Grand Prairie Indep. Sch. Dist. v. Southern Parts Imports, Inc.,* 803 S.W.2d 762, 764 (Tex.Ct.App.), *aff'd in part, rev'd in part,* 813 S.W.2d 499 (Tex.1991).

Next, we consider whether the taxing units' liens were avoidable under bankruptcy law. Under the Texas Tax Code, the taxing units' liens were explicitly "[un]enforce[able] against personal property transferred to a bona fide purchaser for value who does not have actual notice of the existence of the lien." Tex.Tax Code § 32.03 (West 1988) (amended 1991). Therefore, under § 545(2) of the Bankruptcy Code, the taxing units' liens were avoidable. *County of Humboldt v. Grover (In re Cummins),* 656 F.2d 1262, 1265 (9th Cir.1981) (interpreting predecessor to § 545(2)).

Finally, we must determine whether the taxing units' liens were avoided under bankruptcy law. As a general rule, the avoidance power set out in § 545(2) of the Bankruptcy Code may only be exercised by the trustee or the debtor-in-possession. *See* 11 U.S.C. § 545(2) ("the trustee may avoid ..."); 11 U.S.C. § 1107 (debtor-in-possession authorized to exercise trustee's avoidance powers); *see also City of Farmers Branch v. Pointer (In re Pointer),* 952 F.2d 82, 88 (5th Cir.) (interpreting § 549 avoidance power), *cert. denied,* --- U.S. ----, 112 S.Ct. 3035, 120 L.Ed.2d 904 (1992). In appropriate circumstances, however, a creditor may

6

be permitted to initiate avoidance—"but only after moving the bankruptcy court for authorization to act on behalf of the trustee or debtor-in-possession." *See Farmers Branch,* 952 F.2d at 88; *Lilly v. FDIC (In re Natchez Corp.),* 953 F.2d 184, 187 (5th Cir.1992).

In the instant case, it is undisputed that Chrysler failed to seek such authorization, relying instead on the clearly mistaken notion that its liens took priority over the taxing units' liens under Texas law. Although the district court managed to construct an argument in favor of Chrysler's standing to pursue avoidance, it could not substitute its will for Chrysler's. Chrysler did not seek authorization to pursue avoidance; therefore, the taxing units' liens were not avoided.[9] *See Farmers Branch,* 952 F.2d at 88; *Lilly,* 953 F.2d at 187. Accordingly, the taxing units possess superior claims to the proceeds of sale of the debtor's inventory.

## III.

For the foregoing reasons, we conclude that the taxing units are entitled to distribution of the proceeds of sale of the debtor's inventory in satisfaction of their secured claims. Accordingly, the bankruptcy court's order, as affirmed by the district court, is REVERSED. This matter is REMANDED to the bankruptcy court for administration consistent with this opinion.

---

[9]Because we conclude that the taxing units' liens were not avoided, we do not reach the issue whether Chrysler's liens would have priority over the taxing units' avoided liens. *See* 11 U.S.C. § 551 (1988) (avoided liens preserved for the benefit of the bankruptcy estate).