**In re WINN'S STORES, INC., Debtor.**

**Bankruptcy No. 94–50533–RBK.**

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Jan. 12, 1995.

Kathryn C. Mallory, Haynes & Boone, L.L.P., San Antonio, TX, Larry D. Hennin, Baer, Marks & Upha, New York City, for debtor Winn's Stores, Inc.

Kirk Swinney, McCreary, Veselka, Bragg & Allen, P.C., Austin, TX, for Taxing Units.

### OPINION

RONALD B. KING, Bankruptcy Judge.

The question in this case is whether a debtor in possession can avoid pre-petition ad valorem tax liens on personal property. Various tax creditors[1] (the Taxing Units) claim pre-petition liens on certain inventory and equipment previously located in three stores closed after the filing of this Chapter 11 case by the debtor in possession, Winn's Stores, Inc. (Winn's). Some of the inventory has been liquidated through retail sales in the ordinary course of business. The equipment and remaining unsold inventory previously located in three closed stores has been moved to other stores, located in other taxing jurisdictions, operated by Winn's. The Taxing Units have requested that their claims for 1993 ad valorem taxes be paid immediately because their collateral has been sold or dispersed to other Winn's stores.[2] Alternatively, they have requested adequate protection.

Winn's argues that its Chapter 11 filing on February 25, 1994, provides it the power as a hypothetical bona fide purchaser to avoid the Taxing Units' liens. The Taxing Units counter that, under Texas law, their liens can be avoided only by a buyer in the ordinary course of business. Because the require-

---

1. The creditors include the County of Crosby, High Plains Water District, Crosby County Special Road District, City of Ralls, Santa Fe Independent School District, Galveston County Water Control Improvement District No. 8, County of Menard, City of Menard, Menard County Hospital District, Menard Independent School District, Menard FM & LR/FC & LR, and Menard County Water District No. 1.

2. The Taxing Units did not assert liens which attached on January 1, 1994, for pre-petition 1994 taxes. Such taxes are payable without penalty on or before January 31, 1995. TEX.TAX CODE ANN §§ 31.02(a), 32.01 (Vernon 1992 & Supp. 1995); *In re Midland Indus. Serv. Corp.*, 35 F.3d 164, 167 (5th Cir.1994).

ments for a buyer in the ordinary course are more stringent than those for a bona fide purchaser, the Taxing Units assert that Winn's cannot avoid their liens.

### DISCUSSION

■ Winn's relies on sections 545 and 1107 of the Bankruptcy Code.[3] They provide, in pertinent part:

> The trustee may avoid the fixing of a statutory lien on property of the debtor to the extent that such lien—
>
> .    .    .    .    .
>
> (2) is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of commencement of the case, whether or not such a purchaser exists; . . .

11 U.S.C. § 545 (1988).

> (a) Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, . . . and powers, and shall perform all the functions and duties, . . . of a trustee serving in a case under this chapter.

11 U.S.C. § 1107(a) (1988).

Read together, these provisions provide Winn's the power to avoid the Taxing Units' liens to the extent they are not enforceable "against a bona fide purchaser that purchases such property . . . whether or not such a purchaser exists."[4] Enforceability of the statutory liens[5] against a bona fide purchaser for value ("BFP") is thus the linchpin.

---

3. 11 U.S.C. §§ 545, 1107 (1988). Title 11 is referred to herein as the Bankruptcy Code.

4. Winn's acknowledges the Taxing Units' liens and their superiority. *See* TEX.TAX CODE ANN. § 32.01(a), (Vernon Supp.1995) ("On January 1 of each year, a tax lien attaches to property to secure payment of all taxes, penalties and interest. . . ."); TEX.TAX CODE ANN. § 32.05(b) (Vernon 1992) ("a tax lien . . . takes priority over . . . the claim of any holder of a lien on property encumbered by the tax lien. . . ."); *In re Midland Indus. Serv. Corp.*, 35 F.3d 164, 166–67 (5th Cir.1994). Winn's claims, however, that the liens are avoidable, or alternatively that the taxes should not be paid prior to confirmation of a plan of reorganization.

The Taxing Units admit that under Texas law their liens are not enforceable against a buyer in the ordinary course ("BOC"), but assert that their liens *are* enforceable against a BFP. In support, they cite section 32.03 of the Texas Tax Code, which provides, in pertinent part:

> (a) A tax lien may not be enforced against personal property transferred to *a buyer in ordinary course of business as defined by Section 1.201(9) of the Business & Commerce Code* for value who does not have actual notice of the existence of the lien. . . .
>
> (b) A *bona fide purchaser for value* or the holder of a lien recorded on the manufactured home document of title is not required to pay any taxes, penalties, or interest except for those years for which a valid tax lien has been duly filed and recorded pursuant to the provisions of Section 32.015 of this code. . . .

TEX.TAX CODE ANN. § 32.03 (Vernon 1992) (emphasis added).

This provision was amended in August, 1991. The prior statute read as follows:

> (a) A tax lien may not be enforced against personal property transferred to a *bona fide purchaser* for value who does not have actual notice of the existence of the lien. . . .

TEX.TAX CODE ANN. § 32.03 (Vernon 1984) (amended 1991) (emphasis added).

■ It is apparent from the text of the prior statute that the 1991 amendment distinguishes between a BOC and a BFP.[6]

---

5. Winn's does not dispute that the Taxing Units' liens are statutory. 11 U.S.C. § 101(53) (Supp. IV 1992) (defining statutory liens).

6. The legislative history of this amendment reveals only the Legislature's lack of awareness of the purpose of this particular amendment. After passing through the Texas Senate without this amendment, on its second reading in the House, the bill's House sponsor, Representative Stiles, "offered" it to the House. An excerpt of his offer of the bill is instructive on the bill's "announced" purpose:

> This is an omnibus property tax relief bill, similar to bills we passed in past sessions. It allows people more rights before appraisal

Nothing else so readily explains the difference between the current subsection (a), discussing the rights of a BOC, and the current subsection (b), discussing the rights of a BFP, or the reason in 1991 that the phrase "bona fide purchaser" was replaced in subsection (a) with the phrase "buyer in ordinary course of business." [7]

■ Both terms of art, BFP and BOC, are relatively well-defined, nationally and in Texas. In Texas, a person must satisfy all of the following elements to qualify as a BFP:

1.  Good faith;

2.  purchase;

3.  for value (not necessarily present consideration, i.e. antecedent debt qualifies); and

4.  without notice (not knowledge).[8]

districts in rendering their property. The bill would guarantee confidentiality over information provided to an appraisal district concerning income and expenses on a taxpayer's business property. The bill would stop the abusive practice by some appraisal districts which attempt to come back and assess a taxpayer's property long after the close of the tax year.
Debate on S.B. 772 on the Floor of the House, 72nd Leg.R.S. (May 23, 1991) (transcript of Tape 121, Side B, available from Legislative Research Library, House Tapes, Reagan Bldg. Room 203, Texas State Capitol complex). The amendment deleting reference to a BFP and adding reference to a BOC "grants" relief to taxing jurisdictions by making their liens less avoidable (by increasing the prerequisites necessary to avoid such liens). Thus, in the middle of an "omnibus property tax relief [for taxpayers] bill" a provision is added to afford relief not to the taxpayer, but to the taxing jurisdictions.
More revealing, however, are Mr. Stiles' comments just prior to reading this particular amendment: "Grusendorf, is this your amendment that I'm doing? Is this yours? Is this yours?" (long pause, but no audible answer to these questions). Id. Mr. Stiles read the amendment, no one objected, and the amendment was adopted. The amendment's sponsor was apparently unaware of the origin and purpose of the amendment.
Absent "a result demonstratively at odds with the intentions of its drafters," the plain meaning of legislation should be conclusive. United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)).

Cooksey v. Sinder, 682 S.W.2d 252, 253 (Tex. 1984) (BFP in real property context requires a "good faith" purchase for value without legal notice); Strong v. Strong, 128 Tex. 470, 98 S.W.2d 346, 347 (1936); Williams v. Jennings, 755 S.W.2d 874, 881 (Tex.App.—Houston [14th Dist.] 1988, writ denied); City of Richland Hills v. Bertelsen, 724 S.W.2d 428, 429 (Tex.App.—Fort Worth 1987, no writ); Valentine v. Colley, 294 S.W.2d 308, 310–11 (Tex.Civ.App.—Waco 1956, no writ); Gerber v. Pike, 249 S.W.2d 90, 92–93 (Tex.Civ. App.—Texarkana 1952, no writ); see BLACK'S LAW DICTIONARY 177 (6th ed. 1990) (defining BFP as "one who has purchased property for value without any notice of any defects in the title of the seller").

■ Texas law defines a BOC as follows: [A] person who in good faith and without knowledge that the sale to him is in viola-

7.  It is likely that the amendment resulted from lobbying by taxing jurisdictions in the Texas Legislature after this Court's decision in In re Boerne Hills Leasing Corp., 117 B.R. 264 (Bankr. W.D.Tex.1990), rev'd, 15 F.3d 57 (5th Cir.1994). See Stephen W. Sather, Ad Valorem Taxes: Friend or Foe?, UNIVERSITY OF TEXAS SCHOOL OF LAW TENTH ANNUAL BANKRUPTCY CONFERENCE, Nov. 1991, at 22.

8.  Some dispute (or confusion) exists as to whether "knowledge" or "notice" is a requirement. Most cases, in the real property context, have found that a lack of notice is a sufficient condition. Houston Oil Co. of Texas v. Hayden, 104 Tex. 175, 181, 135 S.W. 1149, 1152 (1911) (requiring only notice, not knowledge); Socony Mobil Oil Corp. v. Belveal, 430 S.W.2d 529, 535 (Tex.Civ.App.—El Paso, 1968, writ ref'd n.r.e.), cert. denied, 396 U.S. 825, 90 S.Ct. 68, 25 L.Ed.2d 76 (1969) (notice, not knowledge); but see County of Burleson v. General Elec. Capital Corp., 831 S.W.2d 54, 58 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (using knowledge and notice interchangeably); Thompson v. Apollo Paint & Body Shop, 768 S.W.2d 373, 377 (Tex. App.—Houston [14th Dist.] 1989, writ denied) (requiring knowledge in personal property context) (citing Hayden, 104 Tex. at 181, 135 S.W. at 1152 (requiring only notice, not knowledge); Belveal, 430 S.W.2d at 535 (requiring only notice, not knowledge); and Carter v. Converse, 550 S.W.2d 322, 329 (Tex.Civ.App.—Tyler 1977, writ ref'd n.r.e.) (requiring knowledge in the real property context)).

The distinction is irrelevant in this case. Even if the required element is knowledge and not notice, a BFP is still sufficiently distinct from a BOC so as to deny a trustee BOC status.

tion of the ownership rights or security interest of a third party in the goods buys in ordinary course from a person in the business of selling goods of that kind but does not include a pawnbroker.... "Buying" may be for cash or by exchange of other property or on secured or unsecured credit and includes receiving goods or documents of title under a pre-existing contract for sale but does not include a transfer in bulk or as security for or in total or partial satisfaction of a money debt.

TEX.BUS. & COM.CODE ANN. § 1.201(9) (Vernon 1994). Thus, the basic elements of a BOC are:

1. Good faith;
2. without knowledge (not notice);
3. buying;
4. in the ordinary course; and
5. from a person in the business of selling such goods.

■■■ Although the requirements are similar, they are not the same. *Borg–Warner Acceptance Corp. v. Dugger (In re Teel),* 9 B.R. 85, 87 (Bankr.N.D.Tex.1981) (finding "no authority for the proposition that a 'good faith purchaser for value' is equivalent to a 'buyer in ordinary course of business'"). The "knowledge" required of a BOC is a more demanding awareness standard than the "notice" required of a BFP. *See* TEX. BUS. & COM.CODE ANN. § 1.201(25) (Vernon 1994) (defining notice and knowledge). Similarly, "buying" is more restrictive than "purchasing for value." *Compare* TEX.BUS. & COM.CODE ANN. § 1.201(9) (Vernon 1994) (excluding an antecedent, money debt from the definition of buying—a buyer must give *new* value) *with* TEX.BUS. & COM.CODE ANN. §§ 1.201(32) (defining "purchase" as including gift transactions), 1.201(33) (defining "purchaser" as one who takes by "purchase") and 1.201(44) (Vernon 1994) (defining "value" as including a pre-existing claim). *See Permian Petroleum Co. v. Petroleos Mexicanos,* 934 F.2d 635, 648–49 (5th Cir.1991) (explaining "buying" and "new value"); *In re Gary Aircraft Corp.,* 681 F.2d 365, 377 (5th Cir. 1982) (distinguishing "purchaser" from "buyer"). Finally, a BOC has the additional requirement that he essentially "buy from inventory." *See* TEX.BUS. & COM.CODE ANN.

§ 2.403 cmt. 3 (Vernon 1994); *Evergreen Marine Corp. v. Six Consignments of Frozen Scallops,* 4 F.3d 90, 97 n. 8 (1st Cir.1993). By buying from inventory, the fourth element (requiring that the buying be in the ordinary course) and the fifth element (requiring that the seller be in the business of selling such goods) are satisfied.

Winn's is clothed only with the powers of a BFP under section 545(2), and has no greater rights than a trustee under section 1107(a). Winn's hypothetical BFP status does not empower Winn's to avoid the Taxing Units' liens because Winn's has not shown that it possesses the additional elements necessary to make it a hypothetical BOC. The additional requirements necessary to qualify as a BOC, lack of knowledge and buying from inventory, have not been bestowed upon Winn's by statute. Thus, Winn's cannot avoid the Taxing Units' liens.

This conclusion derives support from an Eighth Circuit case clearly on point. In *Drewes v. Carter (In re Woods Farmers Coop. Elevator Co.),* 946 F.2d 1411 (8th Cir. 1991), *subsequent appeal dismissed,* 983 F.2d 125 (8th Cir.1993), the Eighth Circuit addressed the issue of whether a bankruptcy trustee invested with the power of a hypothetical BFP could defeat a statutory lien where the statute creating the lien allowed avoidance only by a BOC. In *Woods Farmers,* the debtor operated a grain warehouse and storage facility in North Dakota when it filed for relief under Chapter 7 of the Bankruptcy Code. The debtor's primary secured lender had a security agreement covering all of the debtor's after-acquired inventory. Also, under North Dakota law, co-op farmers who stored grain at the debtor's elevator received "receipt holders' liens." Created by statute, the receipt holder's lien could be avoided only by a BOC. *Id.* at 1413. The trustee sold the grain in the elevator and the primary secured creditor and the co-op farmers claimed the roughly $200,000 remaining.

The trustee sought to avoid the receipt holders' liens. He argued that his powers as a hypothetical BFP under section 545(2) allowed him to avoid the statutory liens created in favor of the receipt holders. The re-

ceipt holders countered that only a BOC, not a BFP such as the trustee, could avoid their liens. The Eighth Circuit held that while a BOC is also a BFP, a BFP is not necessarily a BOC. In other words, the qualifications necessary to become a BFP are necessary but not sufficient qualifications for becoming a BOC. The court held that because a bankruptcy trustee is clothed only with the powers of a BFP, it lacks the additional qualifications necessary to avoid statutory liens as a BOC. *Id.* at 1413–14.

Like the trustee in *Woods Farmers,* Winn's is clothed only with the powers of a BFP. Like the statute in *Woods Farmers,* section 32.03(a) of the Texas Tax Code allows only a BOC, not a BFP, to avoid liens created thereunder. Like the liens of the co-op farmers in *Woods Farmers,* the Taxing Units' statutory liens are not avoidable by a trustee or a debtor in possession. The only link *Woods Farmers* does not provide in the chain of reasoning is the priority of the unavoidable liens.[9] In this case, the Texas statute provides that the Taxing Units' liens are superior to almost all other liens in the property, regardless of when the liens attached. Tex.Tax Code Ann. § 32.05(b), (c) (Vernon 1992).

The Taxing Units have valid and superior lien claims on the personal property sold or relocated by Winn's. Winn's cannot use or sell the personal property unless it can provide adequate protection under section 363(e) of the Bankruptcy Code. While the debtor in possession has the burden of proof on the issue of adequate protection under section 363(o), Winn's has offered a lien on the proceeds of liquidation sales which were held in its variety stores pursuant to prior orders of this Court. Winn's offer of adequate protection meets its burden on the adequate protection issue, and its offer will be adopted and the Taxing Units will be granted liens on the liquidation sale proceeds to secure payment of their taxes. This action is without prejudice to the right to file objections or proceedings to determine the proper amount of taxes.

This Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Fed.R.Bankr.P. 7052 and 9014. A separate order will be rendered contemporaneously herewith.

---

**9.** *Woods Farmers* did not reach the issue of whether the receipt holders' liens primed the secured creditor's security interest. The court only concluded that the receipt holders' liens were not avoidable by the bankruptcy trustee. 946 F.2d at 1414.